UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRADHOL INTERNACIONAL, S.A.,

                Plaintiff,

- against -

COLONY SUGAR MILLS LIMITED,

                Defendant.

1:09-cv-00081-RJH

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

      In admiralty, a "mixed" contract is one that creates both maritime and non-maritime obligations.  The underlying question in this case is whether the mixed contract alleged in the complaint creates severable obligations, such that it falls within the federal admiralty jurisdiction.  Plaintiff Tradhol Internacional, S.A. has moved the Court to reconsider a prior order which answered that question in the negative.  The Court, however, cannot decide the motion, because Tradhol subsequently filed a notice of appeal from the Court's order.  Accordingly, Tradhol's motion for reconsideration will be denied as moot.

## BACKGROUND

      Tradhol filed its complaint on January 7, 2009.  The complaint stated two claims against defedant Colony Sugar Mills Limited.

      In the first claim, Tradhol alleged that it had entered into a contract with Colony to purchase 3,000 metric tons of neutral anhydrous fermentation ethyl alcohol "free on board" a vessel nominated by Tradhol.  (¶ 4.)  In mercantile contracts, "free on board" means the seller must clear the goods for export, and the buyer must arrange for

transportation.  *Black's Law Dictionary* 737 (9th ed. 2009) ("*Black's*").  Thus, Colony was responsible for delivering the ethyl alcohol to Tradhol, and Tradhol was responsible for shipping it.

Delivery was to occur at the port of Karachi, Pakistan during the first half of October 2008.  (¶ 4.)  According to the complaint, "COLONY was to be responsible directly to TRADHOL for the payment of dead freight and demurrage for any delays or shortages arising from its fault in loading the product on the vessel . . . ."  (¶ 5.)[1]  Aside from this allegation, the complaint did not contain any allegations concerning the relationship between the contract's primary objective (the sale of ethyl alcohol) and its demurrage and dead freight provisions.  Nor was a copy of the underlying contract attached to the complaint.  *See* Fed. R. Civ. P. 10(c).

The complaint continued to allege that Colony breached this contract twice, first by demanding prepayment for 1,500 metric tons of ethyl alcohol, and second, by only delivering 1,200 metric tons of ethyl alcohol to the vessel Tradhol nominated.  (¶ 6.)  Tradhol demanded damages of $242,117.00 for dead freight; $515,885.42 for demurrage; $54,000 for lost profits; $78,750 "for various damages arising from the delay in loading the product;" $95,000 for financing the prepayment; $360,000 for "the difference between [Tradhol's] sales price and the replacement costs for the 1,800.874 metric tons of undelivered product;" and $218,133.65 for the difference between its prepayment and the value of ethyl alcohol actually delivered to the vessel.  (¶ 7.)

---

[1] In maritime contracts, dead freight is the amount paid by a shipper to a shipowner for the ship's unused cargo space.  *Black's* 738.  Demurrage is a form of liquidated damages owed by a charterer to a shipowner for the charterer's failure to load or unload cargo by an agreed time.  *Id.* at 498.

In its second claim, Tradhol alleged that it had contracted with Colony to purchase 600 metric tons of B grade fermentation ethyl alcohol free on board a vessel nominated by Tradhol.  The product was to be delivered by the end of August 2008 at the port of Karachi, Pakistan.  (¶ 10.)  The complaint alleged, again without providing specifics, that "COLONY was to be responsible directly to TRADHOL for the payment of dead freight and demurrage for any delays or shortages arising from its fault in loading the product on the vessel . . . ."  (¶ 11.)

According to the complaint, Colony breached this contract on two occasions.  On September 27, 2008, Colony demanded that Tradhol prepay for the entire 600 metric tons of product, plus an additional sum of $22,715 for other unspecified claims.  (¶ 12.)  Then, on November 28, 2008, Colony "defaulted by refusing to provide product for loading . . . ."  (¶ 13.)  (The complaint did not explain the discrepancy between the date of Colony's latter default and the August 2008 delivery date.)  Tradhol demanded damages of $335,215 for non-delivery of ethyl alcohol at the load port, and $23,963,17 for lost profits.  (¶ 14.)  Including attorneys' fees, interest, and costs, the complaint demanded total damages of $3,023,065.23.  After making the customary allegations about Colony's lack of presence in the district, *see Seawind Compania, S. A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir. 1963), the complaint requested that the Court issue process of maritime attachment and garnishment against Colony pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (the "Supplemental Rules").

By order dated January 15, 2009, the Court denied the requested attachment. Relying on Judge Buchwald's timely opinion in *Glencore AG v. Bharat Aluminum Co.*

*Ltd.*, No. 08 Civ. 9765(NRB), 2008 WL 5274569 (S.D.N.Y. Dec. 15, 2008), the Court noted that for a contract claim to support federal admiralty jurisdiction, there must be a direct and substantial link between the underlying contract and the operation of a ship, its navigation, or its management afloat.  For a mixed contract to meet this standard, the contract must support a claim that is severable from its non-maritime obligations, or the non-maritime elements must be "merely incidental" to the maritime elements.  The Court reasoned that, as in *Glencore*, the Complaint failed to make this showing.

The next day, Tradhol moved the Court by letter to reconsider its ruling.  (Letter from Armand P. Mele to Hon. Richard J. Holwell (Jan. 16, 2009) ("Mele Letter").)  Tradhol pointed out that its complaint asserted dead freight and demurrage claims totaling $758,003.41.  (*Id.* at 2-3.)  Thus, it reasoned that it had "clearly sought maritime damages which are severable from the non-maritime obligations of the contract.'"  (*Id.* at 2.)  Tradhol did not explain why it sought an attachment of more than $3 million when its maritime claims totaled less than $1 million.

Before the Court acted on the motion, Tradhol on February 13, 2009, appealed from the January 15, 2009, order.  All proceedings, here and in the Second Circuit, have been ex parte.

## DISCUSSION

*1. Jurisdiction.*  "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously.  The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982),

*superseded on other grounds by* Fed. R. App. P. 4(a)(4) (1993).  There are exceptions to this rule, *e.g.*, *Tancredi v. Met. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004) (attorneys' fees); *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989) (proceedings on merits after grant or denial of preliminary injunction); *id.* (judgment which does not determine entire action); *Leonhard v. United States*, 633 F.2d 599, 610 (2d Cir. 1980) (clerical error); but none is applicable here.  Once Tradhol filed its notice of appeal, jurisdiction over the question of this Court's admiralty jurisdiction transferred to the Second Circuit.  *See Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962).

Conceivably, one could argue that Tradhol's letter should be characterized as a Rule 60(b) motion for relief from an order, which the Court could deny (but not grant) without reacquiring jurisdiction.  *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002); *see Rosado v. Johnson*, 589 F. Supp. 2d 398, 400 (S.D.N.Y. 2008) (Holwell, J.) (nature of motion determined by its substance, not label attached to it).  A few courts in the Second Circuit have adopted this argument to act on a motion for reconsideration.  *E.g.*, *Guadagni v. New York City Transit Authority*, No. 08-CV-3163 (CPS)(SMG), 2009 WL 750224, at *2 n.3 (E.D.N.Y. Mar. 19, 2009) (Sifton, J.); *Terio v. Johann*, No. 05 Civ. 5918(RPP), 2007 WL 60411, at *1 (S.D.N.Y. Jan. 8, 2007) (Patterson, J.); *Mickens v. United States*, No. 97-CV-2122 JS, 2006 WL 2505252, at *1 (E.D.N.Y. Aug. 28, 2006) (Seybert, J).  But in the context of this case, the argument is quite weak.  Tradhol's letter does not rely on any of the traditional grounds for relief under Rule 60(b), instead arguing judicial error, the hallmark of a motion for reconsideration.  And it would twist the language of the rule to say that Tradhol is

seeking to be "relieve[d]" "from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). Tradhol doesn't want "relief" from the Court's January 15 order—it wants Colony's money to secure it claims. Thus, Tradhol's motion for reconsideration is moot.

*2. Merits.* Nevertheless, it bears noting in view of the above-cited authorities that even if the Court had jurisdiction over Tradhol's motion, the motion would not succeed.

Section 1333(1) of the Judicial Code provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1331(1) (2006). In *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004) ("*Kirby*"), the Supreme Court held that to determine whether a contract is maritime, a federal court should apply the two-step analysis of *Kossick v. United Fruit Co.*, 365 U.S. 731 (1961). A court, that is, should begin by asking whether the alleged contract was "maritime," which in turn depends on the "the nature and character of the contract" and whether it "has reference to maritime service or maritime transactions." *Kirby*, 543 U.S. at 24. If the contract *is* maritime, the court must consider whether it "was . . . nevertheless of such a 'local' nature that its validity should be judged by state law?" *Kossick*, 365 U.S. at 735.

The *Kirby* Court described this approach as "conceptual," because it turns on an objective inquiry into the predominant purpose of the contract rather than the contract's place of performance:

> Conceptually, so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce—and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage. Geography, then, is useful in a conceptual inquiry only in a limited sense: If a bill's *sea* components are insubstantial, then the bill is not a maritime contract.

*Id.* at 27.  Applying the approach in *Kirby*, the Court held that two intermodal bills of lading fell within the federal admiralty jurisdiction, because their "primary objective" was to "accomplish the transportation of goods by sea from Australia to the eastern coast of the United States," and no "specific Australian or state interest" justified departure from a uniform federal rule of decision.  *Id.* at 14, 27-29.[2]

In *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307 (2d Cir. 2005), the court noted that *Kirby* required it to "'focus 'on whether the principal objective of a contract is maritime commerce,' rather than on whether the non-maritime components are properly characterized as more than 'incidental' or 'merely incidental' to the contract."  *Id.* at 315 (citations omitted), *abrogating Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 199 (2d Cir. 1992).  The court thus held that an insurance policy that gave "fairly robust ship repair and maintenance coverage" was maritime.  *Folksamerica*, 413 F.3d at 324.  In *Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43 (2d Cir. 2008), the court explained that a court should ask "whether the principal objective of a contract is maritime commerce, rather than . . . whether the non-maritime components are properly characterized as more than 'incidental' or 'merely incidental' to the contract."  *Id.* at 49 (quoting *Folksamerica*, 413 F.3d at 315).  Under this standard, contracts in which the plaintiffs acquired a right to treasure recovered from a sunken ship were maritime.  *See id.* at 49.

All this matters because Supplemental Rule B requires a plaintiff to show that it has a "valid prima facie *admiralty* claim against the defendant" in order to obtain process

---

[2] In shipping, intermodal means "making use of differing modes of transport during the journey between the place of dispatch and the destination."  VII *Oxford English Dictionary* 1120 (2d ed. 1989).

of maritime attachment and garnishment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434  (2d Cir. 2006) (emphasis added).  The plaintiff, furthermore, must satisfy the heightened pleading standard that applies to actions under Supplemental Rule B in making this jurisdictional showing.  In addition to satisfying the general requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a); *cf.* Fed. R. Civ. P. 12(e).

While the Advisory Committee notes to Rule E are silent about the rationale for requiring a specific statement of a plaintiff's maritime claim, the rule's purpose is plain enough.  Because maritime attachment actions are usually ex parte, counsel operate under a heightened duty of candor to the court.  *E.g.*, *Maine Audubon Soc. v. Purslow*, 907 F.2d 265, 268 (1st Cir. 1990) ("Where counsel appears *ex parte* . . . the customary checks and balances do not pertain—and the court is entitled to expect an even greater degree of thoroughness and candor from unopposed counsel than in the typical adversarial setting.").  Thus, Rule E(2)(a) gives *procedural* effect to a preexisting *professional* duty held by counsel in maritime attachment actions.  At a more pragmatic level, the severe nature of the attachment remedy and the reality that it frequently operates on parties with little or no connection to the United States easily justify demanding specific allegations of the plaintiff.  *See Glencore*, 2008 WL 5274569, at *5.  "[B]ecause prejudgement

attachment is such a severe remedy, it is important to first determine whether a contract is, in fact, a maritime contract . . . ." *Williamson*, 542 F.3d at 48.

Tradhol's complaint did not make this showing. At the outset, there is some question whether the severability doctrine survives *Kirby*; and as Tradhol concedes, it has no maritime claim unless it can sever its maritime claims for dead freight and demurrage from its non-maritime claims for non-delivery of ethyl alcohol. (*See* Mele Letter 2.) The premise of the severability doctrine is that a court may divide a contract into its component parts and pronounce some but not all of them "salty." *See Compagnie Francaise de Navigation a Vapeur v. Bonnasse*, 19 F.2d 777, 779 (1927) (L. Hand, J.). Yet *Kirby* by its terms requires analysis of the allegedly maritime contract as a whole. *See Williamson*, 542 F.3d at 49 ("[T]he proper inquiry is 'whether the principal objective of a contract is maritime commerce . . . .'").

Assuming the doctrine remains viable, the allegations of the complaint do not show that Tradhol entered into a severable contract. A maritime obligation is severable from the remaining obligations if it "can be separately enforced without prejudice to the rest." *Compagnie Francaise*, 19 F.2d at 779. Tradhol's complaint, however, simply alleges that "COLONY was to be responsible directly to TRADHOL for the payment of dead freight and demurrage for any delays or shortages arising from its fault in loading the product on the vessel . . . ." (Compl. ¶¶ 5, 11.) The complaint contains no allegations from which the Court could conclude that these obligations are severable, and intuitively one suspects they are not. A business does not enter into a mercantile contract to cover its maritime obligations, but to procure goods.

For these reasons, Tradhol's request for an attachment was properly denied. "Dead freight" and "demurrage" are not magic words that relieve a plaintiff of the burden of pleading a valid prima facie maritime claim.

## CONCLUSION

Tradhol's January 16, 2009, motion for reconsideration is denied as moot.

SO ORDERED.

Dated: New York, New York
       August 4, 2009

Richard J. Holwell
United States District Judge